UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00047-HBB

SANDRA FLORES O/B/O K.K.F.,
F/K/A K.K.D.O.                                                              PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Sandra Flores o/b/o K.K.F., f/k/a K.K.D.O. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 17) and Defendant (DN 27) have filed a Fact and Law Summary. Additionally, Plaintiff has filed a motion for judgment on the pleadings (DN 17) and Defendant has filed a response (DN 27). For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15). By Order entered July 19, 2018 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

On February 3, 2005, Plaintiff filed an application for Supplemental Security Income on behalf of K.K.D.O., a two-year old child (Tr. 180-82). In a determination dated July 7, 2005, K.K.D.O. was found to be disabled as of May 1, 2004 (Tr. 11, 61, 65-80). At the time her primary diagnosis was communications disorder and her secondary diagnosis was asthma (Tr. 14, 61).

On October 22, 2012, it was determined that medical improvement occurred as of that date and K.K.D.O. was no longer disabled (Tr. 15, 63, 64, 81-86). By then her primary diagnosis was communications disorder and her secondary diagnosis was attention deficit hyperactivity disorder (ADHD) (Tr. 63). On October 26, 2012, Plaintiff executed a form indicating she wished to continue receiving benefits on behalf of K.K.D.O. while she appealed the determination that K.K.D.O.'s disability had ceased (Tr. 87-88).

At the reconsideration level, State Agency Disability Hearing Officer James Polivka conducted a hearing on May 12, 2015 (Tr. 11, 102-120). On May 20, 2015, he issued a decision upholding the initial determination that K.K.D.O., who by then was 12 years old, was no longer disabled as of October 22, 2012 (Tr. 11, 102-120, 121-127).

Plaintiff again executed a form indicating she wished to continue receiving benefits on behalf of K.K.D.O. while she appealed the determination that K.K.D.O.'s disability had ceased (Tr. 130-31). Plaintiff also filed a request for a hearing by an Administrative Law Judge (Tr. 132-135).

On April 26, 2017, Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 11, 34). Plaintiff, her daughter K.K.D.O., and their attorney John R. Sharpensteen, III, participated from Owensboro, Kentucky (Tr. 11, 32, 34).

In a decision dated August 3, 2017, the ALJ evaluated whether K.K.D.O., who had not attained age 18, continued to be disabled (Tr. 11-27). The ALJ applied a three-step sequential evaluation process promulgated by the Commissioner (Tr. 11-27). *See* 20 C.F.R. § 416.994a((b). The ALJ began her assessment by recognizing the "comparison point decision" or CPD was dated July 7, 2005 and K.K.D.O.'s medically determinable impairments were found to functionally equal the listings (Tr. 14). *See* 20 C.F.R. §§ 416.924(d), 416.9 26a.

In Finding Nos. 3 and 4, the ALJ concluded medical improvement occurred as of October 22, 2012, and K.K.D.O. was currently an adolescent (Tr. 15). *See* 20 C.F.R. §§ 416.926a(c) and (g)(2). In Finding No. 5, the ALJ determined since October 22, 2012, the impairments that K.K.D.O. had at the time of the CPD have not functionally equaled the Listings of Impairments (Id.). *See* 20 C.F.R. §§ 416.994a(b)(2), 416.926a, Social Security Ruling 05-03p. In reaching this determination, the ALJ made findings regarding the degree of limitation the impairments have caused since October 22, 2012 in six broad areas of functioning called domains[1] (Tr. 15-23). The ALJ concluded since October 22, 2012, the impairments present at the CPD have not resulted in either "marked" limitation in two domains of functioning or "extreme" limitation in one domain

---

1 The six domains are (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi).

of functioning (Tr. 22-23). Consequently, the ALJ found the impairments have not functionally equaled the listings since October 22, 2012 (Id.).

In Finding No. 6, the ALJ determined since October 22, 2012, K.K.D.O. had the following severe impairments: ADHD; communication disorder; social anxiety disorder; and selective mutism (Tr. 23). In Finding Nos. 7 and 9, the ALJ determined since October 22, 2012, K.K.D.O. has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.). In Finding Nos. 8 and 10, the ALJ found since October 22, 2012, K.K.D.O. has not had an impairment or combination of impairments that functionally equals the listings (Id.). The ALJ explained that K.K.D.O. does not have either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning (Tr. 23-26). In Finding No. 11, the ALJ concluded that K.K.D.O.'s disability ended as of October 22, 2012, and she has not become disabled again since that date (Tr. 26-27).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 177). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion,

even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

A child under age eighteen is considered "disabled" within the meaning of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining children's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(a)-(d).

To meet a listing within Appendix 1 the child claimant must demonstrate both the diagnostic and the severity or "B" criteria are satisfied. 20 C.F.R. § 416.925(d). To medically equal a listing there must be medical findings supported by medically acceptable clinical and laboratory diagnostic techniques that demonstrate the impairment is at least equal in severity and duration to the listed finding. 20 C.F.R. § 416.926(a) and (b). The Administrative Law Judge will consider the medical opinions of the State agency medical advisors in deciding medical equivalence. 20 C.F.R. § 416.926(c).

If the impairment does not meet or medically equal any listing in Appendix 1, the Administrative Law Judge will determine whether it results in limitations severe enough to functionally equal the listings in Appendix 1. 20 C.F.R. § 416.926a(a). In making this determination, the Administrative Law Judge will consider the degree of limitation caused by the impairment in six broad areas of functioning called domains. 20 C.F.R. § 416.926a(b)(1). The six domains are (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). If an impairment results in "marked" limitations in two of the six domains or results in an "extreme" limitation in one of the six domains then it is severe enough to functionally equal the listings. 20 C.F.R. § 416.926a(a). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

A.

1.  Arguments of the parties

Plaintiff specifically contests Finding Nos. 5, 7, 8, 9, and 10, and incidentally contests Finding Nos. 3 and 11 (DN 17-1 PageID # 345-53). Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she erred in assessing K.K.D.O.'s limitations in two of the six domains of function (Id.). First, Plaintiff challenges the ALJ's finding that K.K.D.O. had a less than marked limitation in the domain of acquiring and using information (Id. PageID # 345-49). Plaintiff contends the ALJ's assessment does not comport with Social Security Ruling 09-3p because she failed to have K.K.D.O. evaluated for autism spectrum disorder.[2] Plaintiff explains that adjudicators have an obligation under SSR 09-3p to pursue "any indications that an impairment(s) may be present" when there are significant unexplained problems in this domain (Id.). Plaintiff also contends the ALJ failed to adequately consider the evidence of K.K.D.O.'s degree of limitation in the domain of acquiring and using information (Id.).

Next, Plaintiff challenges the ALJ's finding that K.K.D.O. had a marked as opposed to extreme limitation in the domain of interacting and relating with others (Id. PageID # 349-53). Plaintiff asserts that the ALJ in assessing the degree of limitation did not consider K.K.D.O.'s selective mutism, difficulty socializing with strangers, and inability to form relationships (Id. citing SSR 09-5p). Further, Plaintiff accuses the ALJ of failing to consider all activities and K.K.D.O.'s difficulties in doing certain activities in assessing whether her functioning in this domain is age-appropriate (Id. citing SSR 09-5p and SSR 09-1p). Plaintiff again alludes to the possibility that

---

2 Plaintiff asserts that K.K.D.O. exhibited several significant but unexplained problems in acquiring and using information that indicate she may have an autism spectrum disorder (DN 17-1 PageID # 345-49).

7

K.K.D.O. may have autism spectrum disorder (Id.). Plaintiff contends the ALJ should have explained why K.K.D.O. may only be markedly as opposed to extremely limited in this domain because she likely has an extreme limitation which would mean her impairment functionally equals the listings (Id.).

Defendant concedes that the ALJ did not fully articulate her assessment that K.K.D.O. had less than a marked limitation in acquiring and using information and had a marked limitation in interacting and relating with others (DN 27 PageID # 380-83 citing Tr. 20). Defendant argues both errors are harmless because remand likely would not change the result in these domains of function (Id. PageID # 380-83, citing Layton ex re. B.O. v. Colvin, No. 12-12934, 2013 WL 5372798, at *15 (E.D. Mich. Sept. 25, 2013) (harmless error because the outcome would not have changed if the Administrative Law Judge expressly compared the evidence to specific listings). Defendant explains that the ALJ's findings regarding K.K.D.O.'s degree of limitation in both domains are supported by the testing and report of consultative examiner Susan Lear, Psy.D. and other evidence in the record (Id. citing Tr. 16, 18, and 231-38). Defendant asserts even if it was error that the ALJ did not articulate more, the error was harmless because it is clear the ALJ considered the relevant information in reaching her conclusions about the degree of limitation in both domains (Id. citing Tr. 16-18, 20, 231-38, 257, 261 and Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 536 (6th Cir. 2001)).

Defendant contends that Plaintiff is merely speculating that K.K.D.O. has symptoms of autism (Id. PageID # 381-82). Defendant points out that there is no medical opinion in the record

substantiating Plaintiff's position (Id.). Further, Defendant points out that disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of the condition (Id. citing Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 551 (6th Cir. 2014)).

2. Discussion

Plaintiff does not object to the ALJ's conclusion that K.K.D.O.'s impairments did not meet or medically equal the Listings. Rather, her appeal focuses on the ALJ's assessment of whether K.K.D.O.'s impairments functionally equaled an impairment in the Listings, based on an assessment of the six domains found in 20 C.F.R. § 416.926a(a). More specifically, Plaintiff takes issue with the ALJ's assessment of the evidence regarding the domain of acquiring and using information and the domain of interacting and relating with others. As explained above, K.K.D.O. must show that the ALJ's decision that she suffered from less than marked limitations in two of the six domains, or an extreme limitation in one domain, is unsupported by substantial evidence or fails to comport with applicable law.

Considering the totality of the decision, the ALJ provided a thorough evaluation (Tr. 16-17, 18, 20, 24, 25) of the consultative speech and language evaluations performed by Karen Wight, M.S., on June 21, 2012 and November 4, 2015 (Tr. 227-30, 256-59); the consultative psychological examination performed by Susan Lear, Psy.D., on June 21, 2012 (Tr. 231-38); the treatment records received from Dr. Manilal Shah (Tr. 239-42, 260-65); the treatment records received from Dr. Shanna L. McGinniss (Tr. 266-73). The ALJ set forth a more than adequate explanation of the weight she accorded (Tr. 25) to the childhood disability evaluation form filed out by the non-examining State agency physician Dr. H. Anzures and psychologist D. Vandiver, Ph.D. (Tr. 250-55); Ms. Wight's speech and language assessments (Tr. 227-30, 256-59); and Dr. Lear's

consultative psychological assessment (Tr. 231-38). The ALJ accurately summarized evidence received from Plaintiff regarding K.K.D.O. (Tr. 24, 25, 26, 38-52, 55-58). Further, the ALJ explained for the period since October 22, 2012, she found Plaintiff's statements concerning the intensity, persistence, and limiting effects of K.K.D.O.'s symptoms in these domains to be inconsistent with specific information in medical record and Plaintiff's own failures to follow through with recommendations from treating and examining sources (Tr. 25).

Regarding the domain acquiring and using information, the ALJ's assessment included consideration of: the treatment records addressing the diagnosis and treatment of ADHD; the results of psychological testing, including a full-scale IQ of 78; evidence regarding K.K.D.O.'s ability to attend and complete tasks, and difficulty concentrating; Plaintiff's statements about home schooling K.K.D.O. and subjects in which she exceled and struggled; observations of consultative examiner Ms. Wight regarding K.K.D.O.'s attentiveness and ability to remain focused on task, and not requiring redirection; reports of K.K.D.O.'s general oral language abilities being below average; and Ms. Wight's opinion that K.K.D.O.'s less than average performance on the exam "was not a strong indicator that she would have severe difficulty acquiring new information, and using it in a learning environment (Exhibit 1F/4)" (Tr. 18, 25). Although the ALJ identified the above information on a piecemeal basis in two different sections in the decision, she clearly indicated it was considered in making the determination that since October 22, 2012, K.K.D.O. has had less than a marked limitation in acquiring and using information (Tr. 18, 25). Considering the totality of the ALJ's analysis of the evidence in the record regarding this domain of function, the Court concludes that the finding is supported by substantial evidence in the record and comports with applicable law.

The Court will now address Plaintiff's claim concerning Autism Spectrum Disorder (ASD). ASD can usually be reliably diagnosed by age two.[3] Diagnosis in young children is often a two-stage process that begins with general developmental screening during the 9, 18, and 24 or 30 month checkups by a pediatrician.[4] Children who show developmental problems during this screening process are referred for a second stage of evaluation that is conducted by a team of doctors and other health professionals who are experienced in diagnosing ASD.[5]

There is no indication that during checkups K.K.D.O. exhibited developmental problems to a such a degree that her original treating pediatrician Dr. Shah (Tr. 239-42, 260-65) or her subsequent treating pediatrician Dr. McGinnis (Tr. 266-73) ever recommended K.K.D.O. be referred for a second stage of evaluation to determine whether she has ASD. Notably, K.K.D.O. was 12 years old by the time she began seeing Dr. McGinnis (Tr. 264). The October 26, 2015 treatment note memorializing this first visit indicates Dr. McGinnis had a long discussion with Plaintiff about getting K.K.D.O. involved in some activities to help with her social anxiety (Tr. 265). Additionally, Dr. McGinnis recommended K.K.D.O. go to Sunrise Children Services for further counseling; encouraged Plaintiff to have K.K.D.O. sleep in her own bed; and asked Plaintiff to consider enrolling K.K.D.O. in public school to help with her social anxiety and to utilize some of the resources for her academic success (Id.). The record indicates Plaintiff did not follow through with these recommendations.

---

3 https://www.nimh.nih.gov/health/topics/autism-spectrum-disorders-asd/index.shtml

4 Id.

5 Id.

The examining psychologist Dr. Lear (Tr. 231-38) and the examining speech and language specialist Ms. Wight (tr. 227-30, 256-59) did not recommend K.K.D.O. be referred for an ASD evaluation. Interestingly, as a result of the November 4, 2015 evaluation, Ms. Wight recommended K.K.D.O. receive outpatient speech/language therapy services to treat her social communication deficits and further psychological assessment and treatment for her selective mutism (Tr. 258). Plaintiff did not follow through with these recommendations.

In pertinent part SSR 09-3p reads as follows:

> As with limitations in any domain, we do not consider a limitation in the domain of "Acquiring and using information" unless it results from a medically determinable impairment(s). However, while it is common for all children to experience some difficulty acquiring and using information from time to time, a child who has **significant but unexplained problems** in this domain may have an impairment(s) that was not alleged or has not yet been diagnosed. In such cases, **adjudicators should pursue any indications that an impairment(s) may be present**.

SSR 09-3p, 2009 WL 396025, at * 3 (Feb. 17, 2009) (emphasis added).[6] In light of the evidence and recommendations from the treating and examining sources it cannot be said that K.K.D.O.'s problems were significant and unexplained. During the administrative hearing the ALJ clarified—based on the evidence in the record and Plaintiff's failure to follow through with treatment recommendations already received—that she was unwilling to pander to Plaintiff and her counsel's eleventh-hour request for further testing premised on nothing more than speculation

---

6 It is well-established that claimants have the burden of bringing forth evidence establishing that their impairments meet, or are medically or functionally equal to, a listed impairment. *See* Dodson v. Colvin, No. 3:15-CV-0497, 2016 WL 541471, at *13 (N.D. Ohio Feb. 11, 2016); Peshek ex rel. N.R. v. Comm'r of Soc. Sec., No. 1:13-CV-01854, 2014 WL 5684386 at * 13 (N.D. Ohio Nov. 4. 2014); Franklin ex rel. L.F. v. Comm'r of Soc. Sec., No. 4:10-CV-2215, 2012 WL 727799 at *1 (N.D. Ohio Feb. 16, 2012). To the extent Plaintiff asserts that SSR 09-3p shifted this burden to the ALJ, the argument is unavailing.

that K.K.D.O. may have ASD (Tr. 52-55). Substantial evidence supports the ALJ's determination not to pursue such testing. Further, contrary to Plaintiff's claim, the ALJ's assessment comported with the applicable law set forth in SSR 09-3p.

Regarding the interacting and relating with others domain, the ALJ's assessment included consideration of: the diagnosis of a communication disorder that interferes with her ability to talk with and relate to others; treatment records that indicated an improvement in K.K.D.O.'s ability to speak with her physicians and with family members but she continued to struggle with interacting with others due to shyness and limited interactions with her peers due to being home schooled; the State Disability Hearing Officer observation that K.K.D.O. said very few words during the hearing, and refused to respond even when questions were directly addressed to her; Plaintiff's report that K.K.D.O. does not have any friends, is afraid of going out in public, is afraid of talking with others, and does not like being away from Plaintiff; and Plaintiff's report that K.K.D.O. does not talk to strangers, and may go a week without talking to her younger sister (Tr. 20, 26). Although the ALJ identified the above information on a piecemeal basis in two different sections in the decision, she clearly indicated it was considered in making the determination that since October 22, 2012, K.K.D.O. has had a marked limitation in interacting and relating with others (Tr. 20, 26). Considering the totality of the ALJ's analysis of the evidence in the record regarding this domain of function, the Court concludes that the finding is supported by substantial evidence in the record and comports with applicable law.

The ALJ could have more fully articulated her assessment of K.K.D.O.'s degree of limitation in both domains mentioned above. However, these errors are harmless because

remand likely would not change the result in these domains of function.  *See* <u>Layton ex re. B.O.</u>, 2013 WL 5372798, at *15.  In reaching this conclusion, the Court observes that the ALJ's findings regarding K.K.D.O.'s degree of limitation in both domains are supported by substantial evidence in the record.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies:	Counsel